AIDA LAUREANO PÉREZ, ETC., demandante y recurrente, *v.* GUSTAVO SOTO y OTROS, demandados y recurridos.

*Número:* RE-91-160 *Resuelto:* 14 de junio de 1996

78

*Rafael Cardona Campos* y *Elí B. Arroyo*, abogados de los recurrentes; *S. Quiñones Elías*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Hoy nos corresponde resolver, en primer término, si un empleado que sufre un "daño" en el curso de su empleo, consecuencia el mismo de una agresión causada por el hijo incapacitado mental de su patrono, tiene causa de acción en daños y perjuicios contra su patrono, el cual es uno asegurado por el Fondo del Seguro del Estado, *por razón* de que el patrono es el tutor del agresor. Exponemos, *en segundo lugar*, la norma a seguir en el presente caso por el tribunal de instancia respecto a la responsabilidad, en daños y perjuicios, de ese incapacitado mental.

I

El 22 de septiembre de 1986, el codemandado Héctor Soto Bosch, un incapacitado mental, agredió a Heraclives Avilés Vázquez, causante de los demandantes. Como resultado de dicha agresión, el señor Avilés Vázquez falleció el 28 de septiembre de 1986. La referida agresión ocurrió mientras el señor Avilés Vázquez se desempeñaba en sus labores como dependiente en un negocio de ferretería propiedad del codemandado Gustavo Soto, padre del agresor y quien a su vez había sido designado tutor de éste por la Administración de Veteranos. La muerte del señor Avilés Vázquez fue calificada como un "accidente del trabajo" por el Administrador del Fondo del Seguro del Estado, pagán-

dole la compensación que la ley provee a los dependientes del obrero fallecido.

El 24 de septiembre de 1987, la Sra. Aida Laureano Pérez, por sí y en representación de sus hijos Lisandra, Claribel y Heraclives, radicó una demanda contra el señor Gustavo Soto, su esposa, la sociedad legal de gananciales por ellos compuesta y el agresor, Héctor Soto Bosch ante el antiguo Tribunal Superior de Puerto Rico, Sala de Arecibo.(1) El 7 de diciembre de 1987 los demandados contestaron la demanda. Como defensas afirmativas plantearon que la parte demandante carece de causa de acción ya que, al momento de ocurrir el incidente que da lugar a la demanda, el señor Avilés Vázquez era empleado del mencionado demandado; el "accidente" ocurrió en el curso de su empleo, y el patrono estaba debidamente asegurado. Alegaron, además, que "al momento del accidente, el demandado Héctor Soto Bosch por su condición mental era incapaz de conocer el acto q[ue] estaba llevando a cabo por lo que no puede responder [por] los daños y perjuicios causados". Contestación a demanda, pág. 1.

A petición de las partes, el 17 de mayo de 1988 se celebró una "conferencia en cámara" a la que comparecieron ambas partes representadas por sus abogados. En la misma, éstos solicitaron del tribunal que, a la luz de estos hechos y como cuestión de derecho, determinara si procedía la demanda en daños y perjuicios contra un patrono asegurado por el Fondo bajo las circunstancias particulares de este caso y, si por el hecho de que el patrono es a la vez tutor del que ocasionó el daño, independientemente de la protección del Fondo, éste está sujeto a responder por los daños ocasionados por su pupilo. Luego de que ambas par-

---

(1) En la referida demanda, los demandantes reclamaron que como consecuencia de los hechos alegados, "se han visto privado [sic] de la manutención alimenticia, de la compañía y del cariño que le brindaba el causante a su esposa y sus hijos, por lo que estos han sufrido y continúan sufriendo intensas angustias mentales que deben ser indemnizadas por los aquí demandados en forma solidaria, en una suma no menor de $100,000.00 por cada uno". Demanda de 24 de septiembre de 1987, pág. 1.

tes sometieran sus respectivos memorandos de derecho, el 29 de enero de 1991 el tribunal de instancia dictó sentencia en la cual declaró *sin lugar* la demanda, tanto contra el señor Gustavo Soto, por ser éste un "patrono asegurado", como contra el Sr. Héctor Soto Bosch, por ser éste "un incapacitado mental [que] carece de capacidad suficiente para regir sus actos".(2) Sentencia de 29 de enero de 1991, pág. 2.

De esta sentencia recurrieron ante este Tribunal los demandantes señalando, como único error, que "el [t]ribunal de [i]nstancia incidió al no concederle un remedio a los demandantes-recurrentes a pesar de que el daño sufrido por el obrero fue ocasionado por un tercero por el cual debe responder éste así como el tutor de éste, aunque dicho tutor sea un patrono asegurado". Solicitud, pág. 3.

Expedimos el auto radicado. Estando en posición de resolver el recurso, procedemos a así hacerlo.

## II

■ La Ley del Sistema de Compensaciones por Accidentes del Trabajo,(3) 11 L.P.R.A. sec. 1 *et seq.*, establece un sistema de seguro compulsorio o de protección social mediante el cual se le provee al empleado, lesionado o accidentado en el curso de su empleo, tratamiento médico y ayuda económica. *Pacheco Pietri y otros v. E.L.A. y otros*, 133 D.P.R. 907 (1993). Dicha ley, naturalmente, también provee beneficios económicos a los "dependientes" del "empleado accidentado". *Ortiz Pérez v. F.S.E.*, 137 D.P.R. 367 (1994).

■ El empleado, para ser acreedor a los beneficios que la ley le concede, *no* tiene que probar negligencia de per-

---

(2) Copia de la notificación de la sentencia fue archivada en autos el 25 de febrero de 1991.

(3) Ley de 18 de abril de 1935.

sona alguna en relación con el "accidente de trabajo" que sufre. A cambio de tal "protección", el empleado "renuncia" a la acción, por daños y perjuicios, que podría tener contra su patrono por la negligencia de este respecto a la ocurrencia del "accidente del trabajo". Dicho de otra manera, el patrono no responde ante el empleado accidentado, no importando la negligencia en que pudiera haber incurrido. *Pacheco Pietri v. E.L.A.*, ante.

Ahora bien, la Ley del Sistema de Compensaciones por Accidentes del Trabajo establece que si los daños que sufre el empleado, como consecuencia del "accidente del trabajo", provinieren de, o son causados por la negligencia de un "tercero", el obrero accidentado puede demandar a este "tercero" en daños y perjuicios; ello independientemente de la compensación a que por dicha ley tiene derecho a recibir. Art. 31 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 32.([4])

■ Hemos expresado que "tercero" es aquel que es extraño, ajeno y separado a la "interacción jurídica que relaciona al patrono ... con el Fondo del Seguro del Estado en la obligación legal común de asegurar sus obreros y empleados ...". *Lugo Sánchez v. A.F.F.*, 105 D.P.R. 861, 866–867 (1977). Al respecto, hemos sostenido que bajo " 'ninguna premisa puede considerarse tercero o extraño causante de daño al patrono a quien la Ley expresamente dispensa de la obligación de asegurar y quien es parte regulada por el esquema de seguro compulsorio' ". *F.S.E. v. E.L.A.*, 111 D.P.R. 402, 405 (1981). Véase *Lugo Sánchez v. A.F.F.*, ante, pág. 867.

---

([4]) "En los casos en que la lesión, enfermedad profesional o la muerte que dan derecho de compensación al obrero, *empleado o a sus beneficiarios*, de acuerdo con este Capítulo, le hubiere provenido bajo circunstancias que hicieren *responsables a tercero* de tal lesión, enfermedad o muerte, el obrero o empleado lesionado o sus beneficiarios podrán reclamar y obtener daños y perjuicios del tercero responsable de dicha lesión, enfermedad o muerte dentro del año subsiguiente a la fecha en que fuere firme la resolución del caso por el Administrador del Fondo del Seguro del Estado, y éste podrá subrogarse en los derechos del obrero, empleado o sus beneficiarios para entablar la misma acción." (Énfasis suplido.)

■ Ello no obstante, hemos reconocido, como excepción a la doctrina de inmunidad patronal, que en ocasiones el patrono puede responder en daños y perjuicios ante el empleado accidentado en relación con el accidente de trabajo ocurrido; ello así cuando el daño es producido por *actuaciones intencionales* del patrono. Véanse: *Pacheco Pietri y otros v. E.L.A. y otros*, ante, pág. 919 esc. 6, en el cual se cita a *Odriozola v. S. Cosmetics Dist. Corp.*, 116 D.P.R. 485 (1985).

Este Tribunal, *además*, ha sostenido que el patrono asegurado, normalmente inmune a una reclamación por daños en virtud del principio de remedio exclusivo, puede responder en daños ante el obrero que sufre un accidente del trabajo cuando éste "ostenta, además de su capacidad como patrono, *una segunda capacidad dimanante de una obligación independiente a la impuesta como patrono*". (Énfasis suplido.) *F.S.E. v. E.L.A.*, ante, pág. 406.

### III

■ La doctrina de la "doble capacidad" (*dual capacity doctrine*) ha evolucionado hacia una conocida como la doctrina de la "doble personalidad" (*dual persona doctrine*). Véase 2 *Larson, Workmen's Compensation* Sec. 72.81(a) (1989). Ésta ha sido definida de la manera siguiente:

> An employer may become a *third person*, vulnerable to tort suit by an employee, if —and only if— *he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person.* (Énfasis suplido y citas omitidas.)[5]

El comentarista Larson, el cual prefiere el término "doble personalidad" sobre el de "doble capacidad", nos ilustra:

---

[5] 2 *Larson's, Workmen's Compensation* Sec. 72.81, pág. 14-75 (1989).

... The choice of the term "persona" is not the result of any predilection for elegant Latinisms for their own sake; *it is dictated by literal language of the typical third-party statute, which usually defines a third party, in the first instance, as "a person other than the employer."* This is quite different from a "person acting in a capacity other than that of employer." *The question is not one of activity, or relationship—it is one of identity.* (Énfasis suplido y en el original.)[6]

Como podemos notar, la llamada doctrina de la "doble personalidad" trata al patrono, en ciertas clases de situaciones, como a un "tercero". *Wright v. United States*, 717 F.2d 254, 259 (6to Cir. 1983). Conforme la misma, el patrono puede ser considerado como un "tercero" siempre y cuando posea, o exista, una "segunda personalidad" que es *totalmente independiente* de la que posee como "patrono".

Un examen de la jurisprudencia pertinente, tanto a nivel estatal como federal, revela que la situación de hechos específica hoy ante nuestra consideración no ha sido objeto de examen por ninguno de los diferentes tribunales que han aceptado, o rechazado, la doctrina de la "doble personalidad". El comentarista Larson ha expresado al respecto que:

Perhaps the best way to approach a correct analysis of the dual-persona concept is to provide illustrations of *exceptional situations* in which the concept can legitimately be employed. These will ordinarily be situations in which the law has already clearly recognized duality of legal persons, so that it may be realistically assumed that a legislature would have intended that duality to be respected. The duality may be one firmly entrenched in common law or equity. *The status of a trustee or of a guardian is a familiar example of this.* No such case has appeared in the reports, but one can readily hypothesize the case of a trustee who, as trustee, is legal owner of a small business. If the question should arise whether this confers immunity on him as an individual for torts he commits upon employees of the trust business, no one would hesitate to answer in the negative. (Énfasis suplido.)[7]

---

[6] *Larson*, ante, Sec. 72.81(a), págs. 14-76–14-77.

[7] *Larson*, ante, Sec. 72.81(a), págs. 14-77–14-78.

■ Ahora bien, *no* podemos perder de vista que nuestro ordenamiento jurídico contempla la llamada "responsabilidad por hechos ajenos". A esos efectos, establece, en lo pertinente, el Art. 1803 del Código Civil, 31 L.P.R.A. sec. 5142, que:

La obligación que impone la sec. 5141 de este título es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

El padre y por muerte o incapacidad de éste, la madre, son responsables de los perjuicios causados por los hijos menores de edad que viven en su compañía.

*Los tutores lo son de los perjuicios causados por los* menores o *incapacitados que están bajo su autoridad y habitan en su compañía.*

. . . . . . . .

*La responsabilidad de que trata esta sección cesará cuando las personas en ella mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño.* (Énfasis suplido.)

Al respecto, hemos resuelto que se puede imponer responsabilidad, por hechos o actos ajenos, a una persona *cuando existe un nexo jurídico previo entre el causante del daño y el que viene obligado a repararlo.* Véanse: *Nieves Vélez v. Bansander Leasing Corp.*, 136 D.P.R. 827 (1994); *Sánchez Soto v. E.L.A.*, 128 D.P.R. 497 (1991); *Vélez Colón v. Iglesia Católica*, 105 D.P.R. 123 (1976).

En cuanto a esta situación se ha expresado en relación con el articulado del Código Civil español, el cual es similar al nuestro, que la responsabilidad del padre o del tutor emana de la negligencia de éstos en evitar que se cometa el hecho ilícito. C. Rogel Vide, *La Responsabilidad Civil Extracontractual*, 1ra ed., Madrid, Ed. Civitas, 1977, pág. 126.

... Luego no es la causa de la obligación impuesta la representación, ni el interés, ni la necesidad de que haya quien responda del daño causado por el que no tiene personalidad ni garantías de solvencia para responder por sí, *sino el incumplimiento implícito o supuesto de los deberes de precaución y de*

*prudencia que imponen los vínculos civiles que unen al obligado con las personas por quienes debe reparar el mal causado.* (Énfasis suplido.) J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1973, T. XII, pág. 885.

Esta responsabilidad es una de carácter primaria, y no secundaria, pues está basada, no en la culpa o negligencia de los hijos (o incapaces), sino en la del padre o tutor quienes tienen la obligación de vigilancia.

■ Referente a la responsabilidad de un padre respecto a los actos ilícitos de sus hijos menores de edad —situación similar a la responsabilidad del tutor respecto a los actos de su pupilo— hemos expresado que la responsabilidad de los primeros *no* es absoluta sino que cada caso tiene que ser examinado, y resuelto, de acuerdo con sus particulares hechos. *Cruz v. Rivera*, 73 D.P.R. 682 (1952); dicho de otra forma, el "deber de vigilancia guarda relación con el deber de anticipar riesgos que, a su vez, depende de la peligrosidad de la conducta". Íd., pág. 689.

■ Debe mantenerse presente que el transcrito Art. 1803 establece una presunción *juris tantum* contra las partes, o personas, que en el mismo se enumeran. *Álvarez v. Irizarry*, 80 D.P.R. 63, 66 (1957). El padre o tutor puede, naturalmente, rebatir tal presunción mediante prueba demostrativa de que él cumplió con su deber de vigilancia. Íd.

En vista a *todo* lo antes expuesto, y a los hechos *particulares* del caso ante nuestra consideración, somos del criterio que procede revocar la determinación del foro de instancia desestimando la demanda radicada contra el demandado recurrido Gustavo Soto. Éste, no obstante ser un "patrono asegurado" por el Fondo del Seguro del Estado, tiene una "segunda personalidad" —independiente y separada de la de "patrono"— cual es la de tutor de un incapacitado mental; *"personalidad" que emana de una disposición estatutaria.* Dicha situación permite que éste sea considerado como un "tercero" que puede ser demandado por su *posible* negligencia como tutor; esto es, negli-

gencia en el deber o responsabilidad de vigilancia. Ello, naturalmente, requerirá la presentación de evidencia satisfactoria al respecto a nivel de instancia, la cual podrá ser refutada por el mencionado demandado recurrido.

## IV

Lo anteriormente expuesto *no* dispone totalmente del caso de epígrafe; réstanos considerar la interrogante sobre la responsabilidad civil, si alguna, del codemandado Héctor Soto Bosch.([8]) La responsabilidad civil, *en daños y perjuicios*, por actos u omisiones culposos o negligentes llevados a cabo por una persona —mayor de edad e incapacitado mental— *no* ha sido dilucidada, *en forma directa*, por este Tribunal con anterioridad al día de hoy.

El Art. 25 del Código Civil de Puerto Rico, el cual procede del Art. 32 del Código Civil español, establecía:([9])

> La personalidad y capacidad jurídica se extinguen por la muerte. La menor edad, *la demencia*, la prodigalidad, la sordomudez en los que el sordomudo no sepa leer y escribir, la embriaguez habitual y la interdicción civil *no son más que restric-*

---

([8]) Surge de la demanda, lo cual fue aceptado en la contestación a la demanda, y de la determinación de hechos de la sentencia, que el codemandado Héctor Soto Bosch es un incapacitado mental y al cual se le ha designado tutor por la Administración de Veteranos, con el propósito de recibir y administrar los beneficios de incapacidad.

Según las disposiciones que regulan la tutela de veteranos, contenida en nuestro Código Civil, el certificado del Administrador de Veteranos indicando el hecho de la determinación de incapacidad, constituirá evidencia prima facie de la necesidad del nombramiento de tutor. Véase 31 L.P.R.A. secs. 861–879.

([9]) El Art. 25 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 82, es similar, en su redacción, a como estaba redactado el Art. 32 del Código Civil español. Éste leía así:

"La personalidad civil se extingue por la muerte de las personas.

"La menor edad, la demencia ó imbecilidad, la sordomudez, la prodigalidad y la interdicción civil no son más que restricciones de la personalidad jurídica. Los que se hallaren en alguno de estos estados son susceptibles de derechos, y aun de obligaciones cuando éstas nacen de los hechos o de las relaciones entre los bienes del incapacitado y un tercero."

Es menester señalar que el antes transcrito artículo del Código Civil español *ha variado*. La legislación española eliminó el *segundo párrafo* del Art. 32 mediante la Ley Núm. 13 de 24 de octubre de 1983, Legislación Civil.

*ciones a la capacidad de obrar por sí.* (Énfasis suplido.)[10] Art. 25 Código Civil, 31 L.P.R.A. sec. 82.

██ Para que una persona sea responsable de una acción dañosa es necesario que ésta sea "imputable" del acto; esto es, se requiere que el autor del daño haya actuado con libre voluntad y capacidad. Dicho de otra manera, la persona debe tener la capacidad para entender, y querer, el acto realizado. Véase R. de Ángel Yagüez, *La Responsabilidad Civil*, Bilbao, U. de Deusto, 1988, pág. 109. En otras palabras, es "imputable" aquel acto ilícito en el cual su autor es *capaz de discernir* la relevancia de sus actos.

Según nos ilustra Espín Cánovas,[11] la

> ... aptitud para ser sujeto de derechos y deberes, o sea, la personalidad jurídica, recibe el nombre de *capacidad jurídica*. La capacidad se distingue en *capacidad de obrar o de ejercicio*, según que aquella aptitud se refiera a la mera tenencia y goce de los derechos o al ejercicio de los mismos. La *capacidad de derecho* es la base para ostentar derechos o tener obligaciones; el ordenamiento jurídico reconoce por eso la capacidad de derecho a todo hombre; aunque para determinados derechos puede condicionar esa capacidad, no puede privar en absoluto de la misma a ningún hombre, pues ello equivaldría a negarle la propia personalidad jurídica que el Derecho moderno reconoce a todo hombre.
>
> La capacidad de obrar, en cambio, como aptitud que es para ejercitar derechos, no puede otorgarse por igual a todos los hombres, pues el ejercicio de los derechos requiere conciencia y voluntad; por tanto, la capacidad de obrar se condiciona a la existencia en el hombre de esas facultades, a diferencia de la capacidad de goce que se otorga a todos por igual. (Énfasis en el original.)

██ La incapacidad mental no es sino una restricción a la capacidad de obrar, la cual es suplida mediante la representación del tutor. La capacidad de derecho no queda res-

---

[10] A tenor con la Ley Núm. 140 de 14 de diciembre de 1994, el transcrito Art. 25 fue enmendado con el propósito de excluir a los sordomudos de las personas sujetas a restricción de su capacidad civil.

[11] D. Espín Cánovas, *Manual de Derecho Civil Español*, 8va ed. rev., Madrid, Ed. Rev. Der. Privado, 1982, Vol. I, págs. 246–247.

tringida bajo las disposiciones que regulan la tutela, permitiéndosele al incapaz mental, sujeto a tutela, ostentar derechos y obligaciones.

▓▓ En Puerto Rico, las fuentes de las obligaciones lo son la ley, los contratos, los cuasicontratos y los actos y las omisiones ilícitos en que intervenga cualquier género de culpa y negligencia. Art. 1042 del Código Civil, 31 L.P.R.A. sec. 2992. El Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, impone responsabilidad al que causa daño a otro, ya sea mediante acción u omisión en las que intervenga culpa o negligencia.

En ocasión de comentar la ausencia de disposiciones en el Código Civil español —y, por ende, en el Código Civil de Puerto Rico— con relación a la responsabilidad de los incapaces por actos ilícitos culposos o negligentes, nos dice Santos Briz,[12] que

> ... es justo establecer la responsabilidad de los inimputables pcr los daños causados por ellos, cuando de las circunstancias especiales del caso aparece como equitativo al menos un resarcimiento parcial. ...
> *Nada puede objetarse en contra de la aplicación de esas normas al campo de las infracciones de contratos, a falta de disposiciones en la esfera civil.* La norma de anulabilidad del contrato en que interviene un menor no emancipado o un incapaz por otra causa ... no excluye la responsabilidad del mismo, y a efectos de determinar su alcance habrá que acudir a concretar si el menor obró o no con discernimiento, criterio no excluido en derecho civil, al no existir una edad prefijada en las leyes como mínima para exigir responsabilidad patrimonial. (Énfasis suplido.) J. Santos Briz, *La Responsabilidad Civil*, 7ma ed. rev., Madrid, Ed. Montecorvo, 1993, págs. 56–57.

▓▓ Este Tribunal ha reconocido que un *menor de edad*

---

[12] Es necesario mencionar que el Código Penal español establece en su Art. 30 que los padres y tutores de menores e incapaces responden por las accciones (enumeradas en el artículo) de éstos y, en caso que fueran insolventes, o de no existir, el menor o incapaz responderá con su patrimonio. Los tratadistas han afirmado que este artículo "suministra un *criterio seguro* para interpretar el Artículo 1902 del Código Civil [Art. 1802 nuestro]". Yáguez, *op. cit.*, pág. 111. Véanse los Arts. 29–30 del Código Penal nuestro, 33 L.P.R.A. secs. 3151–3152, los cuales disponen que los menores de dieciocho (18) años y los incapaces mentales son inimputables.

no está exento de la obligación impuesta por el Art. 1802 del Código Civil, ante; éste le impone la obligación de reponer el daño causado por actos culposos o negligentes. *Portilla v. Ward, Jr.*, 87 D.P.R. 768 (1963); *Soto v. Corte*, 52 D.P.R. 474 (1938). Ello no obstante, también hemos resuelto que a un *"niño pequeño"* no se le puede imputar responsabilidad por sus actos u omisiones porque carece de prudencia, atención y discreción, *Torres Pérez v. Medina Torres*, 113 D.P.R. 72 (1982), y que la conducta de un menor deberá juzgarse "por la norma de conducta que puede esperarse de un niño de igual edad, inteligencia y experiencia". *Cruz v. Rivera*, 73 D.P.R. 682, 693 (1952).

■ *En la esfera contractual*, y en ocasión de discutir la validez de un contrato efectuado por un incapaz mediante el cual éste resultaba perjudicado al transigir su participación en la herencia de su padre, determinamos que el *factor primordial* es si el incapaz tiene capacidad suficiente para *"darse cuenta"* de la transacción que llevaba a cabo. *Rivera v. Sucn. Díaz Luzunaris*, 70 D.P.R. 181 (1949). A esos efectos, expresamos en el citado caso que:

> La *norma a seguir* en casos civiles es determinar si el contratante, enfermo mental por razón de su enfermedad, *goza de capacidad mental suficiente para darse cuenta de la transacción específica que realiza*, considerándola en todos sus aspectos. El contratante puede ser un loco desde el punto de vista del psiquiatra, y no obstante, tener la capacidad mental suficiente para darse cuenta del alcance de una determinada transacción. (Énfasis suplido.) *Rivera v. Sucn. Díaz Luzunaris*, ante, pág. 188.

*Procede que nos cuestionemos si, en una situación como la que nos ocupa, debemos aplicar la misma norma*; esto es, si resulta procedente auscultar, a los fines de la imposición de responsabilidad por los daños y perjuicios causados, si el incapaz mental, causante de los daños, *estaba o no en condiciones de "darse cuenta" del acto que estaba realizando.*

Comentando sobre la responsabilidad civil, en daños y

perjuicios, por actos culposos o negligentes de individuos privados total o parcialmente de razón, que establece el Art. 1383 del Código Civil francés,([13]) los autores Mazeaud y Tunc nos expresan que:

¿Cuándo se encuentra privado de razón un individuo? La cuestión se resuelve por los jueces del hecho; aprecian soberanamente si el autor del daño está en su razón o no, si es susceptible de discernimiento o si no lo es. H. Mazeaud y A. Tunc, *Tratado teórico y práctico de la responsabilidad civil y delictual y contractual*, 5ta ed., Buenos Aires, Ed. Jurídicas Europa-América, 1962, T. 1, Vol. II, pág. 98.

Éstos, más adelante, nos señalan que

... [no] hay que tener en cuenta para nada el hecho de que el alienado esté sujeto a interdicción o que no lo esté. Especialmente, la presunción legal de falta de consentimiento, establecida por el artículo 502 del Código Civil [Art. 1215 del Código Civil nuestro] cuando el alienado está sujeto a interdicción, no puede aplicarse a esto; el juez sigue siendo libre, si estima que el incapacitado estaba en posesión de sus facultades, para tratarlo como a un cuerdo. (Escolio omitido.) Mazeaud y Tunc, *op. cit.*, págs. 98–99.

La jurisprudencia francesa se inclina hacia ese resultado. A esos efectos, nos señalan Mazeaud y Tunc, *op. cit.*, págs. 109–110, que:

*Los individuos no se dividen en "locos" y "cuerdos". La mayoría de los individuos está entre los dos extremos.* Los tribunales han sido llevados ya a decir que sólo se libran de la responsabilidad los individuos *completamente alienados*; pero que responden de todos sus actos todos los demás enfermos mentales. Al crear así, sobre el terreno jurídico, una oposición que no se corresponde con la realidad clínica, los tribunales plantean el problema de determinar si hay en ciertos individuos la luz de la conciencia que justifica la responsabilidad. Ese problema se plantea rara vez; porque los dementes suelen ser colocados en

---

([13]) Dicho artículo dispone: " 'Cualquier acto del hombre que cause un daño a otro, obliga a aquél por cuya culpa ha ocurrido a repararlo'." " 'Cada uno es responsable, dice, del daño que ha causado, no solamente por sus actos, sino por su negligencia o por imprudencia'." A. Colin y H. Capitant, *Curso Elemental de Derecho Civil*, 4ta ed. rev., Madrid, Ed. Reus, 1960, T. 3, pág. 775.

situación de que no perjudiquen o, en otro caso, los tribunales buscan la responsabilidad del que habría debido vigilarlos o internarlos. Pero, cuando se plantea el problema, los tribunales no pueden resolverlo razonablemente sino con la ayuda de peritos …. (Escolios omitidos y énfasis suplido.)

 Somos del mismo criterio. Esto es, entendemos, y *así lo resolvemos*, que para que un incapacitado mental, que ha causado un daño a otro, pueda ser considerado como inimputable en relación con el mismo *es necesario que su incapacidad mental sea una completa al momento de la ocurrencia de los hechos*; en otras palabras, *su incapacidad al momento de los hechos debe ser de tal naturaleza como para privarlo totalmente de discernimiento de consciencia en el obrar.* Dicho de otra manera, de existir en el autor del daño culposo o negligente indicios de lucidez intelectual al momento de la ocurrencia de los hechos, el incapaz mental sujeto a tutela debe responder civilmente, en daños y perjuicios, por el daño por él causado. *Y es que no debe ser de otra manera.* Resolver lo contrario implicaría concederle *inmunidad civil total*, por adelantado, a toda persona que en nuestra jurisdicción haya sido declarado incapacitado. Sabido es que muchos de ellos gozan, a menudo, de períodos de remisión de su enfermedad.

 De manera pues que, no obstante establecer la declaración judicial de incapacidad mental una "presunción de inimputabilidad", esta "presunción" es una que puede ser rebatida por la víctima de los actos dañosos de ese incapaz mental; *esto es, la determinación sobre responsabilidad, o no, del incapacitado mental es una sujeta a prueba.* Véanse: *Sucesión Cabrera et al. v. Aponte*, 29 D.P.R. 938 (1921); *Rivera v. Sucn. Díaz Luzunaris*, ante. En otras palabras, cada caso debe ser resuelto conforme sus particulares hechos y circunstancias y, naturalmente, de acuerdo con la evidencia que al respecto presten las partes.

## V

Por los fundamentos anteriormente expuestos, *se dictará sentencia revocatoria de la emitida por el antiguo Tribunal Superior de Puerto Rico, Sala de Arecibo; devolviéndose el caso a dicho foro judicial para procedimientos ulteriores consistentes con lo aquí resuelto.*([14])

---

([14]) En la vista evidenciaria que deberá celebrar, dicho foro judicial determinará, entre otros:

(a) en relación con el codemandado Gustavo Soto, si éste incumplió con el "deber de vigilancia" que la ley le impone respecto a las acciones de su pupilo, tomando en consideración el tipo de incapacidad mental de éste último, y

(b) en relación con el codemandado Héctor Soto Bosch, si éste, al momento de la ocurrencia de los hechos dañosos, estaba o no en condiciones de "darse cuenta" del acto que realizó.