Negroni Cintrón, Juez Ponente
*1165 TEXTO COMPLETO DE LA RESOLUCION
Supermercado Alba, Inc. (Supermercado Alba o recurrente) nos solicita-que revisemos la decisión que: emitiera el 20 de septiembre de 2001 el Oficial Examinador, Rafael Sánchez Hernández, mediante la cual confirmó la decisión tomada por el Director de Ejecutivo de la Autoridad de Energía Eléctrica (A.E.E.) y le ordenó al primero el pago de treinta y tres mil ochocientos doce dólares con doce centavos ($33,812.12) al ajustar retroactivamente el consumo de servicio de energía eléctrica por- el que previamente le habían facturado.
Emitimos resolución concediéndole término a la A.E.E. para exponer su posición ante el recurso presentado.
Habiéndolo hecho, estamos en condiciones de resolverlo.
I
La controversia adjudicada surge como consecuencia de que el 17 de julio de 1998, la A.E.E. le envió una carta al Supermercado Alba requiriéndole el pago de treinta y tres mil ochocientos doce dólares con doce centavos ($33,812.12) al ajustar la cuenta de éste, debido a que estimó que el bajo consumo de electricidad que reflejaba esta cuenta se debía a que la medición del consumo se había afectado por un transformador defectuoso. En esa carta, el Sr. Efrén Rivera Carrasquillo, supervisor de ventas al por mayor de la A.E.E., le informó a Supermercado Alba que:

“El 10 de mayo de 1998, el Ingeniero de Medición de Bayamón visitó las facilidades, encontrándose que uno de los transformadores de corriente estaba averiado. En la medición, el transformador de corriente es uno de los dispositivos para medir el consumo de energía eléctrica. El período de ajuste fue desde el 5 de febrero de 1996 hasta el 5 de marzo de 1998, pues a esa fecha (02-05-96) los consumos bajaron considerablemente. ”

Supermercado Alba se opuso, pero la A.E.E. sostuvo su decisión. Inconforme, el primero cuestionó el reclamo y se querelló según lo permite la Ley Núm. 33 del 27 de junio de 1985, según enmendada, conocida como la “Ley para Establecer Requisitos Procesales Mínimos para la Suspensión de Servicios Públicos Esenciales”, 27 L.P.R.A. see. 262 et seq. Planteó que la A.E.E. actuó culposa y negligentemente al pretender imponer responsabilidad a una persona natural o jurídica por actos que surgen por acciones u omisiones que están bajo el control absoluto de la A.E.E.; que ésta estaba impedida de reclamar lo informado al aplicarle las doctrinas de incuria y de enriquecimiento injusto.
La querella fue referida al Oficial Examinador antes indicado, quien posteriormente celebró una vista evidenciaría ante él. En ésta, el Sr. Daniel Cruz Batiz, como representante de Supermercado Alba, declaró en esencia que la reducción en el consumo de energía eléctrica se debió a que, per-economías, comenzó a apagar el equipo eléctrico del local y adquirió una planta eléctrica.
Por su parte, la A.E.E. presentó el testimonio del empleado que reemplazó el transformador averiado, instaló un contador en el Supermercado Alba y recomendó el ajuste correspondiente en la cuenta del cliente. Este declaró que esos transformadores se conocen como “C7” y que. se utilizan para medir el consumo de energía eléctrica. También explicó que cuando se dañan, dejan de reconocer el flujo de energía eléctrica en el lugar. También presentó el testimonio del ingeniero que realizó el historial de consumo de la cuenta. Este descartó la posibilidad de que apagar el equipo eléctrico por determinado número de horas en la noche redujera el consumo de energía eléctrica de la forma en que se registró. También testificó que no pudo considerar el uso de la planta eléctrica que alegadamente le dio el recurrente, pues no lo evidenciaron, según se lo pidió la A.E.E.
El 20 de septiembre de 2001, el Oficial Examinador emitió la decisión impugnada. Desestimó la querella y dispuso que el pago de la deuda se llevara a cabo mediante un plan de pago. A esos efectos, formuló las *1166 siguientes determinaciones de hechos:

“1. El querellante Supermercado Alba, Inc., ocupa un local comercial en SE 818, Calle 1, Caparra Terrace, Puerto Nuevo, P.R. 00921, el cual se dedica al negocio de supermercado desde el año 1985.

2. El día 17 de julio de 1998, la AEE, a través de Efrén Rivera Carrasquillo, Supervisor del Departamento de Ventas al por mayor en la cual se le informa que adeuda la cantidad de $33,812.12 por concepto de energía eléctrica consumida y no cobrada, comenzando desde el mes de febrero del año 1996 hasta el 5 de marzo de 1998. La deuda surge a raíz de una avería en el transformador de corriente, instrumento que mide el consumo de energía. La avería de este equipo no afecta el suministro de energía eléctrica al negocio. La investigación surge a raíz de una investigación de la Oficina de Medición de Bayamón.

3. Alegó el apelante que el Supermercado tuvo problemas en recibir el suministro de energía eléctrica, que se le dañaron equipos, comestibles; mas, sin embargo, no trajo a la vista administrativa evidencia documental, tales como facturas de reparación, compra de equipo de neveras o compresores; tampoco compareció con evidencia que demuestren daños a los alimentos, fotografías, facturas o reclamaciones hechas a la Autoridad.

4. Así mismo, alegó que durante los años, en el cual estuvo averiado el transformador, el querellante adoptó unas medidas para economizar energía eléctrica, tales como apagar los equipos eléctricos, tales como neveras y congeladores durante dos a tres horas durante la madrugada, y adquirió una planta de energía eléctrica a un costo de $22,000. La práctica de apagar los equipos eléctricos ha sido descontinuado, toda vez que la misma no produce una economía de consumo de energía eléctrica. El querellante no produjo copia del contrato de adquisición de la planta ni la autorización que emite la AEE aprobando la instalación o uso de la misma, ambos datos necesarios para establecer la fecha en que comenzaron la utilización de la planta de energía eléctrica. Así mismo, no produjo facturas sobre el pago de combustible para la planta para poder determinar las horas de uso de la misma con el objetivo de estimar la economía que tuvo el Supermercado Alba, Inc., por la utilización de dicha planta.

5. Para determinar la deuda del Supermercado, se llevó un estudio de medición para el término en controversia, del cual transcribimos el consumo de energía eléctrica para un período, produce unos resultados, tales como el siguiente: durante los años:

AÑO FECHA DIAS CONSUMO DEMANDA

1995 03-07 32 28,593-63

04-05 29 26,121 65

05-05 30 27,851 63

1996 03-06 30 16,233 60

04-04 29 15,326 63

05-06 32 18,128 63

1997 03-03 30 5.274 59

04-04 30 7,004 59

05-04 31 7,746 59

1998 05-06 33 29,417 68

06-04 29 27.274 73

El promedio consumo del año 1995, fue de 28,283 KWH, los de los años 1996-1997fue de 11,070 KWH y para el año 1998 fue de 28,345 KWH. Conforme a la prueba presentada por la Autoridad para obtener la economía demostrada para los años 1996-1997, el querellante tenía que haber tenido apagado los enseres eléctricos por lo menos ocho (8) horas cerrado diariamente o utilizar una fuente alterna de energía aprobada 
*1167
por la Autoridad durante ese tiempo.

6. La parte no ha puesto este Oficial Examinador en posición para poder-determinar que las medidas tomadas produjo una economía tan significativa de ahorro de energía o de un ahorro parcial, que no sea el haber apagado los equipos eléctricos que conforme al testimonio del querellante no produjo un cambio significativo de ahorro de energía. ”

Razonó que, por un período de aproximadamente dos años, Supermercado Alba experimentó una reducción de consumo de energía eléctrica debido a una avería en un equipo de medición de energía. Aunque reconoció que Supermercado Alba alegaba que ello se debía a las medidas de economía que había tomado, indicó que el recurrente no presentó prueba con relación al momento que comenzó a utilizar la planta eléctrica, la cantidad de combustible que consumió y el tiempo que se utilizó, imposibilitando la determinación de si hubo algún ahorro en el consumo de energía.
Por estimar denegada de plano la moción de reconsideración que presentara, Supermercado Alba instó el recurso que nos ocupa y formuló los siguientes errores:

“1. Cometió grave error de derecho el señor Oficial Examinador al responsabilizar a la parte apelante-recurrente por actos que surgen expresamente por la culpa y negligencia de la Autoridad de Energía Eléctrica al no darle el mantenimiento oportuno y necesario a su equipo que está bajo la custodia y responsabilidad de dicha agencia y no bajo la custodia y responsabilidad de la parte apelante-recurrente.

2. Cometió grave error de derecho el señor Oficial Examinador al confirmar la decisión de la Autoridad de Energía Eléctrica de pretender cobrarle a la parte apelante-recurrente la cantidad de $33,812.12, cuando el propio Examinador acepta en el último párrafo de la página 11 de su informe, que el término de la deuda de varios años, no se debió a un acto del querellante.

3. Cometió grave error de derecho el señor Oficial Examinador al no resolver las válidas cuestiones de derecho planteadas por la parte apelante-recurrente.

4. Cometió grave error de derecho el señor Oficial Examinador al no determinar a base de la prueba presentada en el caso que la parte apelante-recurrente nada le adeuda a la Autoridad de Energía Eléctrica. ”

Como antes indicamos, estamos en condiciones de disponer del recurso. Los errores señalados pueden ser discutidos conjuntamente, toda vez que es obvio que están íntimamente relacionados.
Adelantamos que, por los fundamentos que a continuación expondremos, debemos denegar la expedición del auto solicitado.
II
De rigor es recalcar que la tabla incluida por el Oficial Examinador en la aseveración 5 de sus determinaciones de hechos, es el producto del estudio realizado por la A.E.E. para comparar el consumo de electricidad del supermercado durante un período de tres años. Incluia una muestra del consumo antes de que se dañara el transformador, durante el período que estuvo dañado y después de que se reparara el equipo para marzo de 1998. Estos datos no fueron ni han sido controvertidos en forma alguna por Supermercado Alba.
Un cuidadoso y desapasionado análisis de estos datos lleva a cualquier persona razonable a reconocer, sin mayor dificultad, que los mismos' respaldan la conclusión de que el consumo de energía eléctrica del Supermercado Alba se redujo en menos de la mitad y en algunas ocasiones, a un cuarto del consumo mensual promedio, durante el tiempo en que estuvo dañado el transformador y afectada la medición que realizaba. *1168 Demuestra, sobre todo, que una vez se sustituyó el transformador por uno nuevo, el consumo de energía eléctrica volvió a ser igual al consumo promedio anterior al período en que el transformador estuvo dañado.
En tales circunstancias y ausente prueba objetiva que respaldare la tesis de Supermercado Alba, es evidente, razonable y lógico que las explicaciones que ofreciera el recurrente para justificar la dramática reducción en su consumo de energía eléctrica durante el tiempo en que el transformador estuvo defectuoso, no fueran creídas por el Oficial Examinador. Irrita las pupilas de la razón que el claro y fuerte valor y efecto probatorio que tenía la información incontrovertida que ofrecía la tabla presentada por la A.E.E., no podía conducir el análisis de la controversia a otro resultado que no fuera el que llegó el Oficial Examinador. Este se entiende, aún más, si se considera que, como juzgador de hechos, indicó que la versión del recurrente estuvo desprovista de datos o prueba objetiva y específica que avalara su teoría de que la reducción en el consumo de electricidad del supermercado se debió a que la empresa apagaba los equipos eléctricos, como neveras y congeladores; - presumimos que en éstos se guardaban alimentos perecederos- de dos a tres horas durante la madrugada y que, también, adquirió una planta de energía eléctrica.
En esas circunstancias, la conclusión del Oficial Examinador no fue irrazonable, caprichosa o en desatención a la evidencia total ante sí. Por ello, no debemos intervenir con las determinaciones de hechos y con la apreciación de la prueba que efectuara. La Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 4 L.P.R.A. sec. 2175, require que los tribunales apelativos confirmen las determinaciones de hechos de una agencia administrativa si están sostenidas por “evidencia sustancial que obra en el expediente administrativo". Esta disposición acoge estatutariamente la norma jurisprudencial que manda a que, de ordinario, los tribunales no intervengan con las determinaciones de hechos de un organismo administrativo, si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995).
Lo anterior persigue evitar que los tribunales sustituyan el criterio de las agencias administrativas, las cuales, como antes indicamos, poseen un conocimiento especializado, por su criterio propio. Es por esta razón que los tribunales debemos ser cautelosos al intervenir con dichas determinaciones. Viajes Gallardo v. Homero Clavell, 131 D.P.R. 275, 290 (1992). Aun en los casos dudosos, cuando la interpretación de la agencia no sea la única razonable, la actuación del organismo administrativo merece deferencia sustancial. Véase: De Jesús v. Departamento de Servicios Sociales, 123 D.P.R. 407, 418 (1989); Asociación Médica de Puerto Rico v. Cruz Azul, 118 D.P.R. 669, 678 (1987).
III
Ahora bien, la lectura de los señalamientos de error levantados revela que Supermercado Alba parte de los actos antes referidos para sostener que la determinación fue errada porque el Oficial Examinador no consideró que la A.E.E. fue negligente al no darle el mantenimiento oportuno y necesario al equipo bajo su custodia y que no estaba sujeto a la custodia y responsabilidad del recurrente; que la causa de la deuda no fueron actos del recurrente y que la A.E.E. tardó injustificadamente en reclamar lo alegadamente adeudado. No tiene razón.
A
El Manual de Términos y Condiciones Generales para el Suministro de Energía Eléctrica de la A.E.E. (“Manual”), dispone en su sección VII(C) lo siguiente:

“En casos de accidentes o problemas en los medios del servicio, el abonado notificará inmediatamente a la Autoridad. En casos de pérdida o daños a la propiedad, por negligencia del abonado, éste deberá pagar los gastos necesarios de reparación o reposición. ”

La sección IX(D) dispone, además, que:

*1169
“La Autoridad acreditará o debitará cualquier cantidad cobrada en exceso o dejada de cobrar por razones de desperfectos y/o irregularidades en el sistema eléctrico del abonado, en los equipos de medición, error en las lecturas, en las constantes, en las tarifas aplicadas o error en los procesos de facturación de la Autoridad. ”

Analizadas conjuntamente ambas disposiciones, no es difícil concluir que la responsabilidad del usuario de notificar cualquier problema con los servicios supone que el usuario conoce o debió conocer el desperfecto o irregularidad que debe ser informado. -Lo contrario sería un absurdo, pues no se puede notificar la existencia de una falla que se desconoce.
En la causa ante nos, el Oficial Examinador no concluyó que Supermercado Alba sabía exactamente que el transformador en cuestión estaba defectuoso. Sin embargo, es difícil creer que no supiera que existía un problema con la medición del consumo, consideradas las facturas que recibía y que le informaban que el consumo de energía eléctrica para 1996 y 1997 se había reducido dramáticamente en por lo menos un cincuenta (50%).
Así pues, no es irrazonable que el Oficial Examinador rechazara la tesis de que toda la culpa era de la A.E. E. Supermercado Alba venía obligado a notificar de cualquier problema en el servicio y ciertamente existieron indicios suficientes de que existía un problema. Por otro lado y de todos modos, Supermercado Alba era responsable de pagar el costo de energía eléctrica que realmente consumió, aunque éste se determinara posteriormente mediante ajustes, de ocurrir desperfectos o irregularidades en el sistema de medición del consumo de energía eléctrica. Así se hizo.
B
Supermercado Alba sostiene, por otro lado, que tiene derecho a reclamar compensación por daños dentro de este procedimiento especial, al tenor de lo dispuesto en el Artículo 1802 del Código Civil, 31 L.P.R.A. see. 5141. No tiene razón. En primer lugar, el procedimiento establecido por la Ley 33, ante, no contempla ni autoriza tal acción como parte del trámite que establece. Por otro lado, el Artículo 1802 del Código Civil, ante, le impone responsabilidad al que causa daños a otro, ya sea mediante acción u omisión en la que intervenga culpa o negligencia, Laureano Pérez v. Soto, 141 D.P.R. 77 (1996), y no existe indicio de que la A.E.E. haya sido negligente.
Para imponer responsabilidad civil bajo este artículo, es necesario que concurran tres requisitos o elementos, a saber: (1) que se establezca la realidad del daño sufrido; (2) que exista la correspondiente relación causal entre el daño y la acción u omisión de otra persona; y (3) que dicho acto u omisión sea culposo o negligente. Colón González v. K-Mart, opinión de 26 de junio de 2001, 2001 J.T.S. 98; Toro Aponte v. E.L.A., 142 D.P.R. 464 (1997); Ramírez Salcedo v. E.L.A., 140 D.P.R. 385 (1996); Tormos Arroyo v. D.I.P., 140 D.P.R. 265 (1996); Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1 (1994); Elba A.B. v. Universidadde-Puerto Rico, 125 D.P.R. 294 (1990).
La culpa o negligencia es la falta del debido cuidado, que a su vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. Toro Aponte v. E.L.A., supra, a la pág. 627.
Debido a ello, en una causa de daños, el reclamante viene obligado a demostrar cuál fue la causa del daño sufrido y el nexo causal, pues el peso de la prueba en estas causas recae en éste. Cotto Guadalupe v. C.M. Insurance Company, 116 D.P.R. 644 (1985).
En esta causa, Supermercado Alba no ha demostrado que la A.E.E. hubiese actuado de forma negligente, ilícita al cobrarle la energía eléctrica que realmente consumió, o que la A.E.E. le haya causado algún daño. En primer término, la prueba circunstancial y directa presentada por la A.E.E. respalda totalmente la conclusión del *1170 Oficial Examinador de que el recurrente consumió la energía eléctrica por la cual se le reclama el pago.
En segundo lugar y por el contrario, fue el recurrente el que incurrió en negligencia al no cumplir con la disposición del Manual que lo obligaba a informar cualquier problema en el servicio de energía eléctrica que recibía; en este caso, la baja en la medición en el consumo, la cual era evidente y muy difícil de que pasara desapercibida.
Según el Manual, Supermercado Alba venía obligado a notificar cualquier anomalía en el funcionamiento del servicio de electricidad, aunque no se debiera a su culpa y no lo hizo.
C
Supermercado Alba también le imputa al Oficial Examinador haber errado al confirmar la decisión de la A. E.E. de pretender cobrarle la cantidad de $33,812.12, cuando el propio Oficial Examinador acepta en el último párrafo de la página 11 de su decisión, que el término de la deuda de varios años, no se debió a un acto del recurrente.
En la vista celebrada, el recurrente alegó que la reducción en el consumo se debió a que decidió apagar el equipo eléctrico durante el período de ajuste (5 de febrero de 1996 hasta el 5 de marzo de 1998) y porque había instalado una planta eléctrica en el lugar. Sin embargo, no pudo evidenciar que el uso de estas medidas produjera la reducción en el consumo. No presentó la certificación de la instalación y las facturas de combustible de la planta eléctrica. Supermercado Alba tampoco refutó la evidencia documental y testifical que presentara la A.E.E. ante el Oficial Examinador. Finalmente, tampoco explicó las interrogantes que saltan a la mente inmediatamente que se analiza su tesis: ¿Por qué Supermercado Alba dejó de usar las medidas de ahorro que alegadamente tomó, cuando se arregló el transformador y se instaló el nuevo contador? ¿A que se debe esa coincidencia?
Ello así, el que el Oficial Examinador haya concluido que la deuda no se haya debido a un acto del recurrente, no implica que éste no esté obligado a satisfacerla. Como ya mencionamos, la Sección IX(D) del Manual dispone que el abonado o usuario no abonado es responsable de los ajustes que realice la A.E.E. por desperfectos en el sistema eléctrico, en los equipos de medición, error en las lecturas, en las constantes, en la tarifa aplicada o error en los procesos de facturación dé la A.E.E. Implica que, independientemente de que el mal funcionamiento del sistema de medición no haya sido causado por el recurrente, éste es responsable del pago por el consumo de energía que no le había sido facturado previamente.
IV
Finalmente, Supermercado Alba le imputa al Oficial Examinador haber errado al no resolver planteamientos sobre la doctrina de estoppel y la doctrina de incuria. Sostiene que la A.E.E. no formuló a tiempo su reclamación. Tampoco le asiste la razón.
La doctrina de los actos propios postula que una vez una parte ha asumido una postura o conducta con la cual creó un estado de derecho que ganó la confianza de la otra parte, quien descansa y actúa a base de ésta, está impedido de asumir una posición contradictoria a la que previamente había representado. La aplicación de esta doctrina permea a través de todo nuestro derecho y aplica a los contratos.
Los requisitos necesarios para la aplicación de la doctrina de actos propios son: (a) una conducta determinada de un sujeto; (b) que haya engendrado una situación contraria a la realidad; esto es, aparente, y mediante tal apariencia, susceptible de influir en la conducta de los demás, y (c) que sea base de la confianza de otra parte que haya procedido de buena fe y que, por ello, haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada. Su propósito es evitar la conducta contradictoria que atenta contra la buena fe que debe existir en todos los órdenes del derecho. Int. General Electric v. Concrete Builders, 104 D. *1171 P.R. 871 (1976). Véase, además, Corraliza Rodríguez v. Banco de Desarrollo Económico, opinión de 9 de enero de 2001, 2001 J.T.S. 5.
En la causa que nos ocupa, el recurrente plantea que la A.E.E. actuó contra sus propios actos al alegadamente cruzarse de brazos y no reparar el equipo averiado. Esto no es correcto.
No existe reclamo de que la A:E:E. haya-dejado transcurrir un tiempo exagerado o razonable, desde que se enteró del desperfecto del transformador. La A.E.E. tampoco está responsabilizando ál recurrente por la avería del transformador. Lo que hizo fue un ajuste retroactivo y le requirió a Supermercado Alba el pago del servicio eléctrico que consumió y que no le fue facturado debido al desperfecto en el equipo de medición o “CT”. La A.E.E. está facultada para ello y no ha actuado contra sus propios actos. Tampoco ha creado un estado de derecho entre las partes, pues su proceder está claramente facultado por su propio reglamento.
En cuanto al planteamiento de que la AJELE, actuó contrario a la doctrina de incuria, Supermercado Alba tampoco tiene razón.
Esta doctrina de equidad se define como la dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que le causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad. Aponte v. Srio. Hacienda, 125 D.P.R. 610, 618 (1990). Para que aplique, debe existir: (1) dilación injustificada en la presentación de la demanda o recurso en un caso donde no exista el término prescriptivo; (2) el perjuicio que ello puede ocasionarle a otras personas, o al público, según las circunstancias de cada caso. Torres Arzola v. Policía de P.R., 117 D.P.R. 204, 209 (1986), citando a Pueblo v. Tribunal Superior, 81 D.P.R. 904, 912 (1960).
Además, para determinar la aplicación de la doctrina de incuria debe evaluarse no solamente el transcurso del tiempo, sino también la justificación, si alguna, de la demora incurrida, el perjuicio que esta última acarrea, el efecto sobre intereses privados o públicos involucrados y examinarse los hechos y circunstancias particulares de cada caso. Colón Torres v. A.A.A. de P.R., 143 D.P.R. 119, 124 (1997), citando a Pérez Pellot v. JASAP, 139 D.P.R. 588, 599-600 (1995); García v. Adm. del Derecho al Trabajo, 108 D.P.R. 53, 58-59 (1978).
Cuando la demora no perjudica a nadie o el perjuicio causado es leve, comparado con el daño que sufriría una o más de las partes o el público, al aplicarse la doctrina de incuria en determinado caso, el lapso debe ser grande para que exista la incuria equitativa. A la inversa, si la dilación es relativamente corta, pero resulta en detrimento sustancial a los derechos individuales o del interés público, procede denegar el recurso solicitado a base de la doctrina de incuria. Torres Arzola v. Policía de P.R., supra a la pág. 209. Sobre todo, es preciso recordar que la doctrina de incuria sigue vinculada a la idea fundamental de la equidad: se acude a la razón y a la conciencia para encontrar soluciones justas, apartándose de la rigurosidad intransigente de los términos fatales. Id.; Pueblo v. Tribunal Superior, supra, a la pág. 912.
Ahora bien, la doctrina de incuria es de aplicación a aquellas acciones que no tienen un término predeterminado y la causa ante nos instada por la AJELE, tiene término para ser ejercitada. Según el artículo 1865 del Código Civil, 31 L.P.R.A. see. 5294, las acciones personales que no tengan señalado un término especial, prescriben a los 15 años,-y la A.E.E. reclamó el pago de lo adeudado en ese término. Además, reclamó el pago, una vez realizó el ajuste.
V
En el análisis final, Supermercado Alba no ha demostrado que la decisión de la A.E.E. sea incorrecta, arbitraria, irrazonable o caprichosa. El Oficial Examinador tuvo base suficiente para concluir que el tiempo en que los equipos de medición estuvieron averiados, el recurrente se benefició de ello y que la A.E.E. está facultada para realizar los ajustes pertinentes en casos de averías de equipos y facturar el consumo al abonado.
*1172 La Sección 4.1 de la L.P.A.U., 3 L.P.R.A. see. 2171, permite que se solicite al Tribunal de Circuito de Apelaciones la revisión de decisiones administrativas. Conforme las normas de derecho que rigen ese proceso de revisión, este Tribunal debe concederle gran consideración y deferencia a las decisiones administrativas, en vista de la vasta experiencia y conocimiento especializado de la agencia. T. Jac, Inc. v. Caguas Centrum Limited, Opinión de 12 de abril de 1999, 99 J.T.S. 60, pág. 884; Rivera Rentas v. A & C Development Corp., 144 D.P.R. 450 (1997); Agosto v. Fondo del Seguro del Estado, 132 D.P.R. 866, 879 (1993). Esta norma armoniza con la que enuncia que los procedimientos y decisiones administrativas tienen una presunción de regularidad y corrección que debe refutar quien las impugna, sin descansar en meras alegaciones. Com. Vec. Pro-Mej. Inc. v. J. P., Opinión de 19 de marzo de 1999, 99 J.T.S. 32, pág. 732.
Por estos fundamentos, se deniega la expedición del auto solicitado.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General