Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JAYLEEN MOLINA SANTIAGO Y OTROS<br><br>Apelantes<br><br>V.<br><br>THE TOWER ACQUISITION GROUP, LLC Y OTROS<br><br>Apelados | KLAN202401156 | Apelación procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Caso Núm.: SJ2020CV03763<br><br>Sobre: Daños y perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, Juez Candelaria Rosa y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2025.

Comparecen la señora Jayleen Molina Santiago por sí y en representación de su hija, Eliezleen García Molina, el señor Raúl E. García Febus, la señora María Mercedes Marrero Mediavilla, la señora Nora García Marrero y la señora Yajaira García Marrero (en conjunto, apelantes) y solicitan que revoquemos una *Sentencia Parcial* emitida y notificada el 24 de octubre de 2024 por Tribunal de Primera Instancia, Sala de Carolina (TPI).[1] En dicha determinación, el TPI desestimó la reclamación de los apelantes en contra de The Tower Acquisition Group, LLC (Tower), Bird Group, LLC (Bird) y Demex Environmental Group, LLC (Demex) (en conjunto, apelados) al determinar que dichas compañías eran patronos estatutarios que gozaban de la inmunidad patronal provista por la *Ley del Sistema de Compensaciones por Accidentes del Trabajo*, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 LPRA sec. 1 *et seq.* (*Ley de Compensaciones por Accidentes del Trabajo*).

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia Parcial* apelada.

---

[1] Apéndice de *Apelación*, Anejo XXXVII, págs. 311-328.

**I.**

Este caso se originó el 15 de julio de 2020, cuando los apelantes presentaron una *Demanda* de daños y perjuicios contra Tower, Bird, Demex, Outsidein Architecture (OIA) y otras entidades cuya identidad desconocían.[2] Mediante esta, alegaron que Tower contrató a Bird como contratista general y a OIA como gerente del proyecto de construcción *The Rise Village* en Carolina. Además, adujeron que Bird contrató a Demex para demoler la estructura existente y que esta segunda compañía empleó "por debajo de la mesa" al señor Raúl Eliezer García Marrero (señor García Marrero) para operar equipo pesado.

Los apelantes sostuvieron que el 10 de junio de 2019, el señor García Marrero estaba operando el *Bobcat* en el decimotercer (13) piso del edificio. Según se alegó, Demex ni Bird delimitaron las áreas que podían ceder ante el peso o las vibraciones del equipo. Dicha circunstancia provocó, según las alegaciones de la *Demanda,* que mientras el señor García Marrero operaba el equipo, el piso cedió, por lo que provocó su caída desde una altura aproximada de ciento cincuenta (150) pies y su fallecimiento. Expresaron que el Negociado de Ciencias Forenses confirmó que la causa de la muerte fue un severo trauma corporal.

Por otro lado, los apelantes indicaron que la Oficina de Seguridad y Salud Ocupacional del Departamento del Trabajo y Recursos Humanos de Puerto Rico (PROSHA) investigó el incidente y generó un informe en el que identificó que Demex y Bird cometieron serias violaciones a las normas de seguridad ocupacional relacionadas a los proyectos de demolición. Esto, por no realizar un estudio de ingeniería para determinar si la estructura resistía el peso

---

[2] *Íd.*, Anejo 1, págs. 1-21.

del equipo ni verificar los planos de la estructura existente, los cuales indicaban que el área donde el piso cedió era un hueco tapado.

Ante ello, los apelantes alegaron que la causa próxima de la muerte del señor García Marrero fue la conducta dolosa, intencional, temeraria, cuasi-delictiva y crasamente negligente de los apelados en incumplir con las medidas reglamentarias de la seguridad en el trabajo. Aseveraron que los apelados respondían solidaria y vicariamente, de conformidad con los Artículos 1802 y 1803 del Código Civil de 1930, 31 LPRA secs. 5141 y 5142, vigente al momento de ocurrir los hechos. Por lo anterior, solicitaron una compensación no menor de $10,000,000.00 y $750,00.00 por concepto de lucro cesante para la señora Molina Santiago y su hija.

Los apelantes plantearon que limitar su compensación a los beneficios que ofrecía la Corporación del Fondo de Seguro de Estado (CFSE) mediante la *Ley de Compensaciones por Accidentes del Trabajo, supra,* era inconstitucional al amparo de la Sección 16 del Artículo II de la Constitución de Puerto Rico. Ello, al argumentar que dicha compensación no proporcionaba una indemnización adecuada por los daños resultantes de la conducta presuntamente dolosa, temeraria o negligente de los apelados.

Posteriormente, el 23 de noviembre de 2020, Demex presentó una *Moción en Solicitud de Desestimación.*[3] En síntesis, peticionó que el TPI desestimara la *Demanda* por no justificar la concesión de un remedio en su contra, en vista de que era un patrono estatutario cobijado por la inmunidad patronal de la *Ley de Compensaciones por Accidentes del Trabajo, supra.* Puntualizó que para el 10 de junio de 2019, fecha en que ocurrió el accidente laboral, Demex mantenía una póliza de seguro de la CFSE que cubría los trabajos de demolición hasta el 31 de diciembre de 2019.

---

[3] *Íd.*, Anejo II, págs. 22-33.

A su vez, Demex señaló que contrató los servicios de Maximino Ginorio Colón para que ofreciera la mano de obra en el proyecto *Majesty Tower*, en la que participaba el señor García Marrero. De esta forma, subrayó que la póliza de la CFSE aseguró a todos los empleados del señor Ginorio Colón, incluyendo al señor García Marrero. En base a lo anterior, argumentó que la inmunidad patronal dispuesta en la *Ley de Compensaciones por Accidentes del Trabajo*, *supra*, les cobijaba frente a las acciones en daños y perjuicios que se presentaran en su contra por accidentes laborales en el proyecto.

Subsiguientemente, el 30 de noviembre de 2020, Bird presentó una *Solicitud de Desestimación bajo la Regla 10.2*.[4] En su escrito, expuso que era contratista general en los trabajos de demolición del proyecto *Majesty Tower*, por lo que subcontrató a Demex. Resaltó que ambas compañías adquirieron pólizas del CFSE que estaban vigentes al momento de ocurrir el accidente laboral en el que falleció el señor García Marrero. Ante ello, sostuvo que las disposiciones de la *Ley de Compensaciones por Accidentes del Trabajo*, *supra*, sobre la inmunidad patronal y los remedios exclusivos aplicaban a los hechos alegados en la *Demanda*. Por ello, planteó que procedía la desestimación de la reclamación en su contra.

De otra parte, Bird abordó el uso del término "intencional" por parte de los apelantes al describir sus alegaciones, aseverando que dicha terminología era una enumeración conclusiva y recital. Asimismo, arguyó que, si bien la *Demanda* contenía alegaciones sobre serias violaciones identificadas por PROSHA, tal informe era objeto de impugnación ante la agencia. Consiguientemente, sostuvo que los hechos señalados por PROSHA no se debían considerar como admisiones. Aun así, enfatizó que el informe de la agencia no caracterizaba ninguna violación como intencional.

---

[4] *Íd.*, Anejo IV, págs. 47-56.

Bird destacó que en *Hernández v. Bermúdez & Longo, S.E.*, 149 DPR 543 (1999), el Tribunal Supremo de Puerto Rico resolvió que el mero incumplimiento de un patrono con su obligación legal impuesta por la *Occupational Safety and Health Act*, 29 USC Sec. 15 (OSHA) de mantener condiciones laborales seguras no afectaba la inmunidad patronal dispuesta en la *Ley de Compensaciones por Accidentes del Trabajo, supra.* Ante ello, arguyó que estaba protegido por la inmunidad patronal, por lo que los apelantes carecían de una causa de acción en su contra. Sostuvo que los beneficios de la CFSE eran el remedio exclusivo que los apelantes tenían disponible.

El 18 de diciembre de 2020, OIA peticionó unirse a las solicitudes de desestimación de Demex y Bird, quien eran los patronos estatutarios del señor García Marrero.[5]

Eventualmente, el 26 de enero de 2021, los apelantes presentaron una *Oposición a Mociones de Desestimación.*[6] En esencia, alegaron que la figura de inmunidad patronal era inaplicable a este caso, ya que los apelados actuaron de manera dolosa, intencional, imprudente, temeraria, cuasi-delictiva y crasamente negligente. A saber, arguyeron que Bird y Demex violentaron las normas de seguridad requeridas por la OSHA*, supra,* en la obra de construcción y demolición que provocó la caída fatal del señor García Marrero. Además, adujeron que Tower era el responsable indirecto de las acciones de Bird y Demex, ya que actuaron como sus agentes y no garantizaron un entorno laboral seguro. Asimismo, mencionaron que OIA era responsable de no supervisar adecuadamente los trabajos de Bird y Demex ni garantizar el cumplimiento de las normas de seguridad y los permisos, aun cuando se le advirtió sobre un posible incumplimiento. Por ello, expresaron que la muerte del señor García

---

[5] *Íd.*, Anejo VII, págs. 67-68.
[6] *Íd.*, Anejo X, págs. 71.223.

Marrero era el desenlace previsible de la acción ilícita de los apelados, ya que no se debió a un accidente, caso fortuito, ni acto de Dios.

A su vez, los apelantes afirmaron que al OIA no formar parte de la cadena contractual desde Tower hasta Demex, era un tercero responsable del incidente que no tenía derecho a la inmunidad patronal, a tenor con el Artículo 29 de la *Ley de Compensaciones por Accidentes del Trabajo, supra,* sec. 32. Igualmente, indicaron que los apelados violentaron las leyes laborales y tributarias al pagar al señor García Marrero en efectivo, "por debajo de la mesa", razón por la cual no se debían beneficiar de la inmunidad patronal. También, solicitaron que el TPI rigiera su criterio en la Sentencia *Luz Meléndez Vélez v. Pharmacia & UpJohn Caribe, Inc.,* CC-2008-392, y en la doctrina *deliberate intent* codificada en el *West Virginia Workers' Compensation Code* para derrotar la inmunidad patronal.

Los apelantes puntualizaron que lo anterior derrotó el crisol mínimo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, por lo que el TPI debía proseguir con la etapa de descubrimiento de prueba para que se develara evidencia sobre la gravedad de la conducta de los apelados. Al respecto, explicó que tenían motivos fundados para creer que existían comunicaciones por parte del ingeniero Morlá con algunos de los apelados en las que les advirtió que no se podía subir ningún equipo a la obra sin antes consultarle.

Más adelante, el 18 de febrero de 2021, Demex presentó una *Réplica a Oposición a Mociones de Desestimación y Otros Remedios.*[7] En concreto, reiteró que los apelantes carecían de una causa de acción en su contra, ya que estaba cobijado por la inmunidad patronal de la *Ley de Compensaciones por Accidentes del Trabajo, supra,* al tener la póliza de CFSE vigente al momento de ocurrir el accidente laboral en el que falleció el señor García Marrero.

---

[7] *Íd.,* Anejo XV, págs. 232-237.

Asimismo, particularizó que el hecho de levantar alegaciones de que la compañía incurrió en conducta dolosa, intencional, imprudentemente temeraria, cuasi-delictiva y crasamente negligente en violar las normas de seguridad requeridas por la OSHA, *supra,* era insuficiente para derrotar la inmunidad patronal que le concedía la *Ley de Compensaciones por Accidentes del Trabajo, supra.*

Tras varios trámites procesales, el 23 de agosto de 2024, Tower presentó una *Moción uniéndose a Moción de Desestimación.*[8] En esta, argumentó que igualmente le aplicaba la inmunidad patronal, puesto que era el desarrollador del complejo de vivienda y comercial *The Rise Village* donde ocurrió el accidente del señor García Marrero. Ante ello, planteó que la causa de acción en su contra se debía desestimar.

Sometido el asunto ante su consideración, el 24 de octubre de 2024, el TPI emitió y notificó una *Sentencia Parcial,* en la que desestimó con perjuicio la causa de acción contra Demex, Bird y Tower.[9] No obstante, el Foro Primario declaró No Ha Lugar respecto la solicitud de desestimación de OIA. Para alcanzar su determinación, el Foro *a quo* formuló las siguientes determinaciones de hecho:

1. La construcción de la obra "The Rise Village", comenzó a principios de 2019. Para esta construcción, Tower Acquisition Group, LLC, contrató a Bird Group, LLC, como contratista general en la demolición del proyecto denominado como "Majesty Tower";
2. A su vez[,] Bird contrató a Demex, como la entidad que estaría a cargo del proyecto de demolición, remoción y limpieza de elementos de la estructura existente;
3. Tower Acquisition Group contrató a OIA como el "chief arquitect" y gerente de la obra. En estas funciones, sus deberes primordiales eran el diseño de la obra, supervisión y gerencia de la obra, que incluye, supervisar los trabajos de los contratistas y sub-contratistas y fungir como oficial de cumplimiento, para velar por el cumplimiento con todas las normas, leyes y reglamentos aplicables a proyectos de construcción, lo que también incluye el componente de los permisos gubernamentales.
4. Demex contrató a García Marrero como empleado de [la] brigada de demolición y lo asignó a la obra de demolición de la cual es producto el alegado daño. Hasta la fecha de su muerte, el trabajo principal de García Marrero consistió en la operación de equipo pesado, incluyendo el "Bobcat" y otros equipos que se utilizaron para demoler parte de la estructura del edificio existente y otros trabajos

---

[8] *Íd.,* Anejo XXXV, págs. 307-308.
[9] *Íd.,* Anejo XXXVIII, págs. 311-328.

relacionados de remoción y limpieza, que era[n] necesarios para comenzar la fase de renovación del edificio existente y su eventual conversión a lo que será "The Rise Village".

5. El 11 de abril de 2019, se suscitó un incendio en los pisos 7 y 8 del edificio de construcción.

6. El 10 de junio de 2019 se le encomendó a García Marrero, operar el Bobcat, equipo con una pala mecánica, para limpiar unos escombros en el piso 13 del edificio. El trabajo consistía en usar la pala pegada al piso como un tipo de "escoba" para empujar los escombros y amontonarlos en un lugar designado en el piso 13 desde donde luego serían desechados por una chorrera ("chute") a cajón ("bin") de escombros en el primer piso.

7. Luego del incendio[,] la Oficina de Seguridad y Salud Operacional del Departamento del Trabajo y Recursos Humanos de Puerto Rico (conocida como "PROSHA"), realizó una investigación del incidente de la muerte de García Marrero.

8. Al PROSHA rendir su informe, esta determinó imponerle penalidades a Demex Enviromental y Bird Group, las cuales se están apelando ante el organismo administrativo. En la demanda se reprodujo un informe con los hallazgos de la PROSHA, pero no se incluyó el informe anejado. Aun cuando todos los hallazgos fueran ciertos, la empresa no pierde su inmunidad patronal.

El TPI resolvió que Demex, Bird y Tower eran patronos estatutarios, a tenor con la *Ley de Compensaciones por Accidentes del Trabajo, supra,* por lo que poseían inmunidad patronal absoluta respecto a las reclamaciones de sus empleados. Subrayó que aun en el supuesto de que estas compañías incumplieron con las medidas de seguridad mínimas en un ambiente de trabajo, no perdieron su inmunidad patronal. En particular, consignó que los apelantes no alegaron que tales compañías cometieron actos intencionales específicos que exceptuaron la aplicación de la inmunidad patronal, sino que formularon conclusiones de derecho incompatibles con la norma jurídica vigente. Ello, en vista de que el Tribunal Supremo validó la constitucionalidad de la inmunidad patronal. En consecuencia, determinó que al interpretar las alegaciones de la *Demanda* de forma conjunta y favorable para los apelantes, estos no expusieron una alegación que justificara la concesión de un remedio contra Demex, Bird y Tower.

Empero, el Foro apelado mencionó que los apelantes alegaron que OIA no fiscalizó los trabajos de Bird y Demex cuando tenía la responsabilidad de contratar los servicios del inspector de obra y

velar por el cumplimiento de las leyes y reglamentos aplicables al proyecto en asuntos de permisología, seguridad e higiene personal. A su vez, sostuvo que los apelantes alegaron que a OIA se le advirtió sobre el incumplimiento con los permisos, previo a comenzar los trabajos de demolición. Del mismo modo, el TPI indicó que los apelantes alegaron que el Artículo 29 de la *Ley de Compensaciones por Accidentes del Trabajo, supra*, sec. 32, les permitía entablar una acción de daños contra un tercero que no era su patrono asegurado. Por tal motivo, estableció que, en esta etapa de los procedimientos, la *Demanda* exponía una alegación que podría justificar la concesión de un remedio contra OIA. Sin embargo, delimitó el descubrimiento de prueba a determinar si OIA era un tercero.

Inconformes, el 8 de noviembre de 2024, los apelantes presentaron una *Solicitud de Reconsideración.*[10] En suma, alegaron que el Foro Primario se apartó del mandato impartido por el Máximo Foro Judicial en que las solicitudes de desestimación se debían atender de forma flexible y liberal. Además, expresaron que en la *Demanda* expusieron alegaciones suficientes sobre la conducta intencional de los apelados para denegar las solicitudes de desestimación y conceder el descubrimiento de prueba. En particular, alegaron que Demex incumplió con sus obligaciones legales y fiscales al pagar a los empleados en efectivo y no presentar la Declaración Trimestral de Contribuciones de Seguro por Desempleo e Incapacidad al Departamento del Trabajo y Recursos Humanos ni la Planilla Trimestral Patronal de Contribución sobre Ingresos Retenida, que eran documentos necesarios para obtener la póliza de la CFSE. Por el anterior incumplimiento, concluyeron que Demex no pagó la póliza de la CFSE, razón por la que se derrotó su inmunidad patronal.

---

[10] *Íd.,* Anejo XXXIX, págs. 329-337.

Por otro lado, los apelantes manifestaron que sentaron las bases sobre los actos intencionales específicos de los apelados que provocaron la muerte del señor García Marrero. Esto, al aducir que Bird no veló por la instalación de una maya anti-fuego para prevenir el fuego industrial que ocurrió previo al accidente laboral. Además, expresaron que Demex ni Bird marcaron las áreas que podían ceder ante el peso o las vibraciones de un equipo pesado, ni realizaron una diligencia razonable para determinar si se podía operar el *Bobcat*. Asimismo, esgrimieron que no se incluyó un estudio del plano estructural, no se cumplieron con las cláusulas estipuladas en las notas del plano, ni se realizó una inspección visual para identificar las faltas de vigas de soporte debajo de las losas donde el *Bobcat* cedió. Los apelantes puntualizaron que las anteriores alegaciones sobre los actos intencionales específicos fueron suficientes para que el Foro Primario denegara las solicitudes de desestimación.

Posteriormente, el 15 de noviembre de 2024, Tower presentó una *Oposición a Moción de Reconsideración*.[11] Esencialmente, precisó que Bird y Demex acreditaron la existencia de las pólizas del CFSE, contrario a las alegaciones de los apelantes. Igualmente, expresó que la mera invocación de la palabra "intencional" era insuficiente para derrotar las mociones de desestimación, ya que los apelantes no especificaron acciones que demostraran tal intención. Por otro lado, caracterizó las alegaciones de los apelantes sobre la negligencia de Bird como omisiones negligentes y no como conducta intencional, específicamente la falta de instalación de una maya anti-fuego, el incumplimiento con las normas de seguridad, la falta de demarcación de las zonas propensas a ceder con el peso de equipos pesados y la omisión de incluir un estudio del plano estructural. Por lo anterior, peticionó denegar la solicitud de reconsideración de los apelantes.

---

[11] *Íd.*, Anejo XLI, págs. 340-345.

De igual forma, el 21 de noviembre de 2024, Bird presentó una *Oposición a Reconsideración.*[12] Mediante esta, adoptó e incorporó los planteamientos expuestos por Tower en su *Oposición a Moción de Reconsideración.* Reiteró que los apelantes utilizaron el término "intencional" de manera conclusiva y recital, sin hacer referencia a las alegaciones fácticas específicas sobre una conducta de tal naturaleza. En tal sentido, adujo que las alegaciones fácticas de la *Demanda* se limitaron a señalar incumplimiento con los estándares de seguridad en el área de trabajo que podrían interpretarse como omisiones negligentes. Por ello, solicitó que el Foro Primario denegara la solicitud de reconsideración de los apelantes.

Tras evaluar los planteamientos de las partes, el 26 de noviembre de 2024, el Foro Primario emitió y notificó sendas *Órdenes* en las que declaró No Ha Lugar la solicitud de reconsideración.[13]

Aún inconformes, el 26 de diciembre de 2024, los apelantes presentaron un recurso de apelación ante este Tribunal, en el que plantearon que el TPI incidió al cometer los siguientes errores:

> **PRIMER ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO EVALUÓ RESTRICTIVAMENTE LA DEMANDA E IGNORÓ Y/O PASÓ POR ALTO ALEGACIONES EXPRESAMENTE CONSIGNADAS EN LA MISMA PARA NEGARSE A ACTIVAR LA EXCEPCIÓN A LA INMUNIDAD PATRONAL.**

> **SEGUNDO ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO CONCLUYÓ QUE LOS DEMANDANTES NO ALEGARON ACTOS INTENCIONALES ESPECÍFICOS CONTRA DEMEX QUE REQUIRIERAN QUE SE EXCEPTUARA A LA EMPRESA DE LA INMUNIDAD PATRONAL.**

> **TERCER ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO CONCLUYÓ QUE NINGUNO DE LOS ESCRITOS DE LA PARTE DEMANDANTE CONTENÍA ALEGACIONES QUE APUNTARAN A QUE DEMEX ERA UN TERCERO, AL CUAL NO LE APLICABA LA INMUNIDAD PATRONAL, DISPUESTA EN LA LEY DEL SISTEMA DE COMPENSACIONES POR ACCIDENTES EN EL TRABAJO.**

---

[12] *Íd.,* Anejo XLII, págs. 346-348.
[13] *Íd.,* Anejo XLIII, pág. 349; Anejo XLIV, pág. 350.

**CUARTO ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO CONCLUYÓ QUE LOS DEMANDANTES NO ALEGARON ACTOS INTENCIONALES ESPECÍFICOS CONTRA BIRD GROUP QUE REQUIRIERAN QUE SE EXCEPTUARA A LA EMPRESA DE LA INMUNIDAD PATRONAL, A PESAR DE SÍ HABER SIDO ALEGADO EN LA DEMANDA[.]**

**QUINTO ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO CONCLUYÓ QUE NINGUNO DE LOS ESCRITOS DE LA PARTE DEMANDANTE CONTENÍA ALEGACIONES QUE APUNTARAN A QUE, BIRD GROUP ERA UN TERCERO, AL CUAL NO LE APLICABA LA INMUNIDAD PATRONAL, DISPUESTA EN LA LEY DEL SISTEMA DE COMPENSACIONES POR ACCIDENTES EN EL TRABAJO.**

**SEXTO ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO CONCLUYÓ QUE LOS DEMANDANTES NO ALEGARON ACTOS INTENCIONALES ESPECÍFICOS CONTRA TOWER GROUP QUE REQUIRIERAN QUE SE EXCEPTUARA A LA EMPRESA DE LA INMUNIDAD PATRONAL, A PESAR DE SÍ HABER SIDO ALEGADO EN LA DEMANDA[.]**

**SÉPTIMO ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO CONCLUYÓ QUE NINGUNO DE LOS ESCRITOS QUE PRESENTÓ LA PARTE DEMANDANTE CONTENÍA ALEGACIONES QUE APUNTARAN A QUE TOWER GROUP ERA UN TERCERO, AL CUAL NO LE APLICABA LA INMUNIDAD PATRONAL, DISPUESTA EN LA LEY DEL SISTEMA DE COMPENSACIONES POR ACCIDENTES EN EL TRABAJO.**

**OCTAVO ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO CONCLUYÓ QUE LA PARTE DEMANDANTE NUNCA ALEGÓ QUE LOS DEMANDADOS NO HUBIESEN PAGADO LAS PRIMAS DE LA PÓLIZA ANTE EL FONDO DEL SEGURO DEL ESTADO, A PESAR DE SÍ HABER SIDO ALEGADO EN LA DEMANDA.**

**NOVENO ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO DICTÓ UNA SENTENCIA PARCIAL DE FORMA PREMATURA Y SIN HABER PERMITIDO UN DESCUBRIMIENTO DE PRUEBA CONCENTRADO EN LOS ACTOS INTENCIONALES QUE DERROTAN LA INMUNIDAD PATRONAL Y QUE FUERON ALEGADOS EXPRESAMENTE EN LA DEMANDA.**

**DÉCIMO ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO DESESTIMÓ PARCIALMENTE LA DEMANDA, SIN HABER CELEBRADO VISTA ALGUNA QUE PERMITIERA ADJUDICAR SI LOS ACTOS DE LOS DEMANDADOS FUERON INTENCIONALES Y, POR TANTO, EXCLUYENTES DE LA INMUNIDAD PATRONAL.**

En esencia, los apelantes manifestaron que en este caso estaba en controversia si Demex, Bird y Tower pagaron sus pólizas de CFSE y si la misma estaba vigente al momento de ocurrir los hechos. En la alternativa, alegaron que en la *Demanda* incluyeron suficientes alegaciones plausibles sobre la conducta intencional de los apelados para denegar las mociones de desestimación y ordenar el descubrimiento de prueba. A saber, enumeraron las siguientes alegaciones sobre el incumplimiento de Demex:

1. Demex no pagaba a sus empleados por nómina, incluyendo a García Marrero, sino que pagaba en efectivo, o como se dice, "por debajo de la mesa".
2. Demex no rendía las planillas, ni pagos trimestrales requeridos a Hacienda, el Negociado de Seguridad de Empleo ni al Servicio de Rentas Internas de los EEUU por concepto de seguro social.
3. Demex tampoco hacía las retenciones y envío de remesas a ASUME, en los casos que era requerido.
4. Demex tenía problemas legales en Hacienda o en el IRS que le impedían hacer pagos en nómina en cumplimiento de ley.

Al respecto, los apelantes plantearon que estas deficiencias en la documentación y en el pago de las primas fueron suficientes para derrotar la inmunidad patronal, lo que justificaba la denegación de las mociones de desestimación y ordenar el descubrimiento de prueba para apoyar tales alegaciones.

Además, enfatizaron que sentaron las bases sobre la conducta intencional que derrotó la inmunidad patronal de Tower, Bird y Demex. Reiteraron que Bird no veló por la maya anti-fuego en el incendio que ocurrió previamente en el edificio y que tanto Bird como Demex no delimitaron las zonas que podían ceder ante el peso o las vibraciones de los equipos. Asimismo, sostuvieron que Bird ni Demex realizaron un estudio de ingeniería, verificaron los planos del edificio para auscultar el hueco tapado en el piso que cedió, ni actuaron con diligencia razonable para determinar si se podía operar un *Bobcat*.

Los apelantes argumentaron que este caso era distinguible de *Hernández v. Bermúdez & Longo, S.E., supra*, debido a sus

alegaciones detalladas de hechos incontrovertibles sobre la conducta ilícita de los apelados y a que concluyeron que tales alegaciones constituían la conducta intencional que provocó la muerte del señor García Marrero. Ante ello, manifestaron que el TPI abusó de su discreción al no celebrar una vista evidenciaria que le permitiera adjudicar si los apelados estaban cobijados por la inmunidad patronal o si esta cedió en virtud de las excepciones reconocidas por el Tribunal Supremo.

Por su parte, el 27 de enero de 2025, Tower presentó su alegato. En primer lugar, sostuvo que los apelantes nunca alegaron en la *Demanda* que Demex no pagó la póliza de la CFSE ni solicitaron una enmienda para subsanar tal deficiencia. Señaló que los apelantes, en su solicitud de reconsideración de la *Sentencia* apelada, alegaron que Demex incumplía con ciertas responsabilidades legales y fiscales, por lo que concluyeron que no pagó la póliza de la CFSE debido a la falta de la documentación necesaria. Sobre el particular, Tower consideró que la postura de los apelantes se basó en una premisa especulativa sobre la falta de presentación de planillas y declaraciones trimestrales por parte de Demex.

En segundo lugar, Tower planteó que los apelantes nunca abordaron ni refutaron los documentos que acompañaron las mociones desestimatorias que establecían que tanto Demex como Bird pagaron y tenían vigentes las pólizas de la CFSE. Tower sostuvo que tras quedar incontrovertida la existencia de las pólizas de la CFSE, los apelantes argumentaron que los apelados incurrieron en una conducta intencional que provocó el fallecimiento del señor García Marrero para derrotar la inmunidad patronal. Al respecto, arguyó que la *Demanda* carecía de alegaciones fácticas específicas que fundamentaran la alegada conducta intencional. Argumentó que, aun si se aceptaran los hallazgos del informe emitido por PROSHA, las violaciones de los apelantes se catalogaron como omisiones

negligentes en lugar de actos intencionales. Por consiguiente, Tower precisó que los apelantes no aportaron prueba que sugiriera que los apelados causaron el accidente que cobró la vida del señor García Marrero intencionalmente. Así, pues, alegó que Tower, Demex y Bird estaban cobijados por la inmunidad patronal de la *Ley de Compensaciones por Accidentes del Trabajo, supra,* ya que las alegaciones de la *Demanda* no derrotaron tal inmunidad.

En igual fecha, Bird presentó una *Oposición a Apelación.* En su escrito, puntualizó que este caso no se trataba de privarle a los apelantes de su día en corte, sino de que estos carecían de una causa de acción en su contra. Ello, al concebir que era un patrono asegurado que gozaba de inmunidad patronal al cumplir con su obligación legal de adquirir la póliza de la CFSE y que los apelantes no alegaron que ocasionó intencionalmente el accidente que sufrió el señor García Marrero.

Bird alegó que tanto las pólizas de la CFSE adquiridas por su compañía como por Demex los hicieron acreedores de la inmunidad patronal que proveía la *Ley de Compensaciones por Accidentes del Trabajo, supra,* al igual que a Tower, debido a que se encontraba en la cadena de patronos del causante. Por otra parte, expresó que la *Demanda* contenía alegaciones fácticas e imputaciones de actos u omisiones culposas o negligentes que no se podían interpretar como intencionales. Pues, adujo que la inobservancia de las normas de seguridad no alcanzaba el grado de intencionalidad. Además, indicó que las alegaciones de conducta dolosa, intencional, imprudentemente temeraria, cuasi-delictiva y crasamente negligente en violar las normas de seguridad requeridas por OSHA, *supra,* eran recitales y conclusivas que carecían de especificidad respecto a las acciones intencionales de cada apelado para derrotar la inmunidad patronal. Por lo anterior, sostuvo que la determinación apelada de

desestimar el pleito en su contra fue correcta, sustentada en la inmunidad patronal que les cobijaba.

Ulteriormente, el 10 de febrero de 2025, Demex presentó una *Oposición a Apelación*. Esencialmente, planteó que el hecho incontrovertido de este caso era que los apelados certificaron ser patronos asegurados a la fecha en que ocurrió el accidente objeto de esta *Demanda*, al cumplir con su obligación de asegurar a sus obreros mediante una póliza de la CFSE. A su vez, adujo que, aun cuando los apelantes hicieron referencia a las violaciones serias halladas por PROSHA, no demostraron actos intencionales por parte del patrono primario o estatutario. Según Demex las alegaciones sobre que incurrieron en conducta dolosa, intencional, imprudentemente temeraria, cuasi-delictiva y crasamente negligente al violar las normas de OSHA, *supra*, eran conclusiones incompatibles con los requisitos de plausibilidad requeridos por la Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2. Por ello, reiteró que, al haber cumplido con las disposiciones de la *Ley de Compensaciones por Accidentes del Trabajo*, *supra*, y en ausencia de alegaciones que establecieran que provocaron intencionalmente el accidente en el que falleció el señor García Marrero, la *Demanda* carecía de una reclamación que justificara la concesión de un remedio.

Tras esbozar los planteamientos de ambas partes, procedemos a exponer la normativa jurídica atinente a este recurso.

**II.**

**A. Desestimación**

La Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2, enumera los fundamentos por los que se permite la desestimación de una demanda como, entre otros, dejar de exponer una reclamación que justifique la concesión de un remedio. Al evaluar una moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2, primeramente, el tribunal debe interpretar las

alegaciones de la demanda, de la manera más liberal posible a favor de la parte demandante. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428-429 (2008). En este sentido, "el tribunal tomará como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas". *Íd.*, pág. 428; Véase también *Blassino Alvarado y otro v. Reyes Blassino y otro*, 2024 TSPR 93; *Costas Elena y otros v. Magic Sport y otros*, 213 DPR 523 (2024); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384 (2022); *Casillas Carrasquillo v. ELA*, 209 DPR 240, 247 (2022); *Colón Gorbea v. Sánchez Hernández et al.*, 202 DPR 760, 765 (2019); *López García v. López García*, 200 DPR 50, 69 (2018); *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994). De esta forma, la desestimación se dirige a los méritos de la controversia, no al trámite procesal del caso. *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 83 (2023); *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 267 (2021); *Montañez v. Hosp. Metropolitano*, 157 DPR 96, 104 (2002).

Posteriormente, el tribunal debe determinar si, en base a los hechos bien alegados en la demanda, existe una reclamación plausible que justifique que la parte demandante tiene derecho a un remedio, a la luz de la experiencia y el sentido común. *Íd.*; *Costas Elena y otros v. Magic Sport y otros*, *supra*. De no cumplir con el estándar de plausibilidad, el tribunal deberá desestimar la demanda y no permitir que una reclamación insuficiente proceda bajo el pretexto de que las alegaciones conclusorias se puedan probar con el descubrimiento de prueba. *Íd.*

Sobre el particular, si bien una demanda sólo debe tener una relación sucinta y sencilla de los hechos demostrativo de que la parte demandante tiene derecho a un remedio, no se presumirán como ciertas las conclusiones legales ni los elementos de la causa de acción apoyados por aseveraciones conclusorias. Véase, Regla 6.1 de

Procedimiento Civil, *supra,* R. 6.1.R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Lexis Nexis, 2017, pág. 307.

Ahora bien, la demanda no debe desestimarse, excepto que se demuestre que la parte demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar en apoyo a su reclamación. *Costas Elena y otros v. Magic Sport y otros, supra*; *Eagle Security v. Efrón Dorado et al., supra,* pág. 84; *López García v. López García, supra,* pág. 70; *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra,* pág. 429; *Comisión v. González Freyre et al.,* 211 DPR 579, 615 (2023). Igualmente, la demanda no debe ser desestimada si es susceptible de ser enmendada. *Íd.*

### B. *Ley de Compensaciones por Accidentes del Trabajo*

La *Ley de Compensaciones por Accidentes del Trabajo, supra,* establece un sistema obligatorio y exclusivo de indemnización para los trabajadores que sufren lesiones, discapacidades o fallecen como consecuencia de accidentes que provengan de cualquier acto o función inherente a su trabajo y que ocurran en su curso, y como consecuencia de este o por enfermedades o muerte derivadas de la ocupación. *Ortiz Pérez v. Del Estado,* 137 DPR 367, 372 (1994). Su propósito principal es proteger el bienestar de los trabajadores y de quienes dependen económicamente de su labor al garantizar una compensación adecuada y un remedio rápido y eficiente, libre de las complejidades de una reclamación judicial ordinaria. *Íd.; Umpierre Biascoechea v. Banco Popular,* 170 DPR 205, 225 (2007); *Pacheco Pietri v. ELA,* 133 DPR 907, 914 (1993).

Para que el trabajador se beneficie de esta Ley, se requiere demostrar que existe un nexo causal entre la lesión o enfermedad y el trabajo. *Pacheco Pietri v. ELA, supra,* pág. 916. Un accidente es compensable cuando (a) provenga de cualquier acto o función del

trabajador; (b) sea inherente a su trabajo y (c) ocurra en el curso de este. *López Cotto v. Western Auto*, 171 DPR 185 (2007).

Ahora bien, esta legislación limita la capacidad de los trabajadores de reclamar daños directamente a sus patronos. *Laureano Pérez v. Soto*, 141 DPR 77, 82-83 (1996). Es decir, a cambio de los remedios médicos y económicos que ofrece la *Ley de Compensaciones por Accidentes del Trabajo, supra*, los trabajadores y sus beneficiarios renuncian al derecho a instar acciones en daños y perjuicios contra sus patronos. *Íd.*; *Lebrón Bonilla v. ELA*, 155 DPR 475, 482-483 (2001). En específico, el Artículo 18 de la *Ley de Compensaciones por Accidentes del Trabajo, supra*, sec. 21, dispone que "**[c]uando el patrono asegure sus obreros y empleados de acuerdo con la presente ley, el derecho aquí establecido para obtener compensación será el único remedio en contra del patrono, aun en aquellos casos en que se haya otorgado el máximo de las compensaciones o beneficios de acuerdo con el mismo**". (Énfasis nuestro). En tal sentido, un patrono asegurado posee inmunidad absoluta contra cualquier reclamación relacionada al accidente laboral, independientemente de su nivel de negligencia. *Umpierre Biascoechea v. Banco Popular, supra*; *Saldaña Torres et al. v. Mun. San Juan*, 198 DPR 934, 943 (2017).

En lo que nos concierne, el Máximo Foro Judicial resolvió que si bien un patrono tiene que comprobar que existen condiciones seguras de trabajo, "**[e]l incumplimiento de esa obligación legal no autoriza causa de acción alguna a favor de los obreros, aun cuando sufran lesiones y tampoco afecta la inmunidad que el patrono tiene bajo el Art. 20 de la *Ley de Compensaciones por Accidentes del Trabajo***". *Guzmán y otros v. ELA*, 156 DPR 693 (2002); *Vda de Costas v. PR Olefins*, 107 DPR 782 (1978) (Énfasis nuestro). Pues, lo contrario tendría el efecto de anular por completo la inmunidad patronal y la exclusividad de remedio que la Asamblea

Legislativa concedió por virtud de la antes mencionada legislación. *Íd.* No proveer un lugar seguro de empleo constituye una conducta crasamente negligente que no constituye una excepción a la inmunidad patronal. *Guzmán y otros v. ELA, supra; Hernández v. Bermúdez & Longo, S.E., supra.*

No obstante, existen excepciones a la doctrina de inmunidad patronal. *Laureano Pérez v. Soto, supra*, pág. 84. Pues, en ocasiones, el patrono podría responder en daños y perjuicios por los daños sufridos por el trabajador si no es asegurado por incumplir con las disposiciones legales. *Íd.*; *Guzmán y otros v. ELA, supra.* El patrono responde directamente si el daño es producido por su conducta intencional[14] como las actuaciones discriminatorias o si posee alguna capacidad que va más allá de su rol como patrono. *Íd.; Hernández v. Bermúdez & Longo, S.E., supra.* En este último escenario, un patrono se puede considerar un tercero cuando posee una segunda personalidad totalmente independiente a la de ser patrono. *González v. Multiventas*, 165 DPR 873, 887 (2005). Igualmente, en caso de que el daño sea imputable a un tercero, el trabajador o sus beneficiarios podrán reclamarle daños y perjuicios, a tenor con el Artículo 29 de la *Ley de Compensaciones por Accidentes del Trabajo, supra*, sec. 32. *Saldaña Torres et al. v. Mun. San Juan, supra.*

Luego de exponer la normativa jurídica, procedemos a aplicarla a los hechos que nos conciernen.

**III.**

En el presente caso, los apelantes presentaron diez (10) señalamientos de error en los que plantearon que el Foro Primario incidió al desestimar la *Demanda* en contra de Tower, Bird y Demex, sin permitirles descubrir prueba sobre sus alegaciones relacionadas

---

[14] En términos generales, el concepto "intencional" se utiliza para referirse a una conducta que no es meramente negligente, sino que el patrono conoce o muestra indiferencia temeraria respecto a que su conducta estaba prohibida por ley. Véase, por ejemplo, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).

a la carencia de un seguro de la CFSE y a la conducta intencional de los apelantes en ocasionar el fallecimiento del señor García Marrero. Señalaron que el TPI no consideró adecuadamente las alegaciones específicas presentadas contra los apelados para derrotar la inmunidad patronal que le proveía la *Ley de Compensaciones por Accidentes del Trabajo, supra.* Según los apelantes, en la *Demanda* presentaron alegaciones suficientes sobre que Bird y Demex incumplieron con la presentación de la documentación necesaria para adquirir el seguro de la CFSE, por lo que concluyeron que no pagaron la referida póliza. Igualmente, dispusieron que, en vista de que los apelantes incumplieron con las normas de seguridad en el empleo, incurrieron en una conducta intencional que provocó la muerte del señor García Marrero.

Tras un análisis sosegado de la totalidad del expediente, determinamos que no les asiste la razón a los apelantes. Al brindarle veracidad a los hechos alegados en la *Demanda* de autos e interpretándolos de la manera más liberal posible a favor de los apelantes, concluimos que no establecieron una reclamación plausible que justificara la concesión de un remedio en contra de Tower, Bird o Demex.

En primer lugar, es menester puntualizar que, contrario a lo alegado por los apelantes, tanto Bird como Demex presentaron prueba fehaciente a satisfacción del Foro Primario y de este Tribunal que demostraron claramente que tenían expedida una póliza de la CFSE, vigente al momento de ocurrir el accidente laboral que ocasionó el fallecimiento del señor García Marrero. Tanto el causante como sus beneficiarios estaban protegidos por los beneficios médicos y económicos que les ofrecía la *Ley de Compensaciones por Accidentes del Trabajo, supra.* Basado en la normativa jurídica vigente, dichos beneficios eran los remedios exclusivos que los apelantes tenían disponible. Es decir, no podían instar una reclamación en daños y

perjuicios en contra de los patronos asegurados. Pues, una vez los patronos del señor García Marrero cumplieron con su obligación legal de adquirir la póliza de la CFSE, la *Ley de Compensaciones por Accidentes del Trabajo, supra,* le concedía una inmunidad absoluta contra cualquier reclamación relacionada al accidente laboral.

Contrario a lo expuesto por los apelantes, estos no presentaron alegaciones suficientes en la *Demanda* para derrotar la prueba que certificaba que la CFSE expidió pólizas a favor de Bird y Demex. No nos persuade la alegación conclusiva que el hecho de que Demex presuntamente incumplió con sus obligaciones legales y fiscales debían concluir automáticamente que los apelados no eran patronos asegurados por la CFSE, en ausencia de alegaciones fácticas. Es preciso aclarar que los tribunales no podemos permitir que proceda una reclamación sin suficiencia fáctica con el pretexto de probar las alegaciones conclusivas en el descubrimiento de prueba. Por ello, no nos convence la petición de los apelantes sobre que se les debía permitir proseguir con la etapa de descubrimiento de prueba para probar sus alegaciones que derrotaban la inmunidad patronal de los apelados.

En segundo lugar, es norma reiterada que, en ausencia de una conducta intencional del patrono en causarle daño al trabajador, no se afecta su inmunidad patronal, independientemente de su nivel de negligencia. Además, el incumplimiento con las condiciones de seguridad en el empleo no constituyó un acto intencional, sino una conducta crasamente negligente que no afectó la inmunidad patronal de la *Ley de Compensaciones por Accidentes del Trabajo, supra.* Al respecto, los apelantes adujeron que presentaron suficientes alegaciones detalladas sobre la conducta intencional de los apelados que provocaron el fallecimiento del señor García Marrero. Ello, al argüir fallas en las medidas de seguridad como la instalación de una maya anti-fuego para prevenir el fuego industrial que ocurrió previo

al accidente laboral, demarcar las áreas que podían ceder ante el peso o las vibraciones de un equipo pesado y realizar inspecciones adecuadas del edificio para determinar si se podía operar el *Bobcat*. Además, al exponer alegaciones conclusorias de que los apelados incurrieron en conducta dolosa, intencional, temeraria, cuasi-delictiva y crasamente negligente al incumplir con las medidas reglamentarias de la seguridad en el trabajo.

Un análisis exhaustivo de las antes mencionadas alegaciones, incluyendo los hallazgos de PROSHA, devela que los actos imputados a Tower, Bird y Demex no constituyen una conducta intencional para derrotar su inmunidad patronal. A lo sumo, demuestran una conducta negligente con relación a las condiciones de seguridad del edificio donde ocurrió el accidente laboral en el que falleció el señor García Marrero. Reiteramos que en nuestro ordenamiento jurídico, la negligencia no es suficiente para derrotar la inmunidad patronal.

Por todo lo anterior, no erró el TPI al resolver que al interpretar las alegaciones de la *Demanda* de forma conjunta y favorable para los apelantes, no expusieron una alegación que justificara la concesión de un remedio contra Demex, Bird y Tower. Al incumplir con el estándar de plausibilidad, correspondía la desestimación de la *Demanda* con respecto a los apelados. Así las cosas, se confirma la *Sentencia Parcial* apelada.

**IV.**

Por los fundamentos antes expuestos, se confirma la *Sentencia Parcial* apelada.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones